UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KHACHIK MARJANIAN, | ) | 03CV1574 BEN (AJB) |
| | ) | |
| Plaintiff, | ) | Order Granting Defendant's Motion for |
| v. | ) | Summary Judgment as to Defendants Smith, |
| | ) | Raupe, Hernandez and Alameida |
| EDWARD ALMEIDA, et. al., | ) | [Doc. No. 29 ] |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Khachik Marjanian, a state prisoner proceeding pro se, filed this action under 42 U.S.C. § 1983 alleging that Defendants violated his rights under the Eighth Amendment to be free from cruel and unusual punishment by exhibiting deliberate indifference to Plaintiff's serious medical needs. Plaintiff further contends that denial of his 602 Inmate/Parolee Appeal Form requesting "immediate and proper medical attention" amounts to a denial of his Substantive and Procedural Due Process rights. Defendants Smith, Raupe, Hernandez and Alameida filed a Motion for Summary Judgment on October 17, 2005. The Court issued a Notice pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) on May 10, 2006, informing Plaintiff of his obligation to respond to Defendant's Motion for Summary Judgment. As of the date of this Order, Plaintiff has not filed an opposition.[1]

_____

[1] A telephonic case management conference was held on July 21, 2006. During the conference With Judge Battaglia, Plaintiff stated that he had submitted a request for additional time in which to file his opposition to Defendants' Motion for Summary Judgment. However, due to the fact that the Motion was filed nine (9) months ago, that Plaintiff was notified over two (2) months ago of his obligations in responding to Defendants' Motion, and the overall untimeliness of the request, which the Court has not yet received as of the date of this Order, the Court will decide the instant motion on papers submitted to

This motion is appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1).  For the reasons explained herein, Defendant's Motion for Summary Judgment is GRANTED as to defendants Smith, Raupe, Hernandez, and Almeida.

### *Factual History*

Plaintiff was received as an inmate at the Calipatria State Prison for men on or about September 16, 1997.  (Def. Ex. C., Marjanian Dep. at 39).  There, he began experiencing a skin irritation on his body which would come and go.  (*Id.* at 38).  Plaintiff described his skin as "sand-papery".  (*Id.* at 36).  He also described feeling a prickly sensation, like bugs crawling over, and biting into, his skin.  (*Id.* at 35, 37).  Plaintiff states that he did not seek medical attention at Calipatria because he was told by another inmate that the cause of his skin irritation was the water.  (*Id.* at 40-41).

Plaintiff was transferred to Centinela State Prison in approximately January of 2000.  (*Id.* at 39).  There, he was referred to CDCR contract dermatologist, Dr. Peterson, for evaluation and treatment.  (*Id.*).  Dr. Peterson treated Plaintiff for three months, prescribing creams, special soaps, and shampoos for him.  (*Id.* at 44).  Various medications were prescribed as Plaintiff's symptoms changed and persisted.  (*Id.* at 44 and 49).  He was also referred to Dr. Duke, a psychiatrist or psychologist,[2] and was given a prescription for Prozac.  (*Id.* at 40, 44-48).  Plaintiff was transferred to Donovan State Prison in January or February of 2001. (*Id.* at 46).  Plaintiff was referred to a staff physician and then referred again to Dr. Peterson.  (*Id.*).  He began to see Dr. Peterson at the Donovan Dermatology Clinic every two to four weeks.  (*Id.* at 50).  He was last seen at the clinic on May 15, 2002. (*Id.*).

Approximately one month later, on June 13, 2002, Plaintiff submitted a 602 Inmate/Parolee Appeal Form requesting "immediate and proper medical attention" (hereafter inmate appeal) for his skin condition.  (*Id.*).  He claimed that Dr. Peterson had failed, despite several attempted remedies, to cure his skin condition.  (Def. Ex. D, Raupe Dec. at ¶ 5).  Lori Raupe, the Health Care Appeals Coordinator (HCAC) at Donovan, assigned Plaintiff's inmate appeal for investigation to Clayton Smith, a Medical Technical Assistant (MTA) at Donovan.  (*Id.* at ¶ 6).  MTA Smith was already acquainted with Plaintiff's condition and was aware that his condition was being treated by Dr. Peterson.  (Def. Ex. E,

date.

---

[2] The record is unclear as to whether Dr. Duke was a psychiatrist or psychologist.

1   Smith Dec. at ¶ 7).  MTA Smith's review of Plaintiff's appeal revealed several past instances of

2   treatment by Dr. Peterson.  (*Id.* at  ¶ 8).  It also revealed that Plaintiff was still under Dr. Peterson's care.

3   (*Id.*).  MTA Smith also noted the numerous medications prescribed to treat Plaintiff's skin condition

4   over the previous two years, and that he had called Plaintiff's housing unit to inform him that his

5   prescriptions were available, but that on three separate occasions, Plaintiff failed to pick-up his

6   prescriptions.  (*Id.*).  Finally, MTA Smith noted that Plaintiff was currently medicated and had a follow-

7   up appointment scheduled with Dr. Peterson in three months.  (*Id.*).

8         Based on these findings and a review of Plaintiff's medical charts, MTA Smith concluded that

9   Plaintiff's medical condition was receiving proper attention from Donovan's medical staff.  (*Id.* at ¶ 9).

10  MTA Smith submitted a written report to HCAC Raupe on July 6, 2002, denying the appeal for lack of

11  merit at the first informal level.  (*Id.* at ¶ 10).  This concluded MTA Smith's contact with Plaintiff

12  regarding his skin condition.  HCAC Raupe reviewed the inmate appeal and MTA Smith's report and

13  returned it to Plaintiff, informing him that he could appeal the decision within fifteen days if he was

14  dissatisfied.  (Def. Ex. D, Raupe Dec. at ¶ 7).

15        Plaintiff appealed MTA Smith's decision to the next level.  (*Id.* at  ¶ 8).  HCAC Raupe was then

16  assigned to investigate the inmate appeal at the second formal level.  (*Id.*).  She  personally confirmed

17  MTA Smith's findings.  (*Id.* at ¶ 10).  She also reviewed the CDRC unit health records for the Plaintiff

18  and interviewed Plaintiff in the Triage Treatment Area in the Central Infirmary.  (*Id.*).  After her

19  investigation, HCAC Raupe partially granted Plaintiff's appeal at the second formal level.  (*Id.* at ¶ 11).

20  HCAC Raupe specified that Plaintiff should continue to receive treatment on an "as needed" basis and

21  confirmed that Plaintiff was on the list to be seen by the dermatologist.  (*Id.*).  HCAC Raupe again

22  advised Plaintiff that he could appeal the decision to the Director's level of review.  (*Id.* at ¶ 12).  HCAC

23  Raupe had no further contact with Plaintiff regarding his skin condition.  (*Id.* at ¶ 13).

24        Plaintiff appealed HCAC Raupe's decision to the Director's level for review.  (Compl., Ex. A;

25  Defs. Ex. A, p. 22).  The appeal was denied at the Directors level due in part to Plaintiff's failure to

26  provide any evidence substantiating his deliberate denial of medical treatment claim.  (*Id.*).  Moreover, it

27  was determined at the Director's level that Plaintiff's medical condition was being actively treated.

28  (*Id.*).  This decision exhausted the administrative remedies available to Plaintiff within the CDC.

### *Standard of Review*

Federal Rule of Civil Procedure 56(c), the granting of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The standard for granting a motion for summary judgment requires judgment be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).  However, "[i]f reasonable minds could differ," judgment should not be entered in favor of the moving party.  *Id.*

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case.  *Anderson*, 477 U.S. at 252; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323; *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."  *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982).  More than a "metaphysical doubt" is required to establish a genuine issue of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324.  The court must examine all of the evidence in the light most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, to successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]."  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (*citing* Fed.R.Civ.P. 56; *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249); *see also Paine v. City of Lompoc*, 265 F.3d 975, 984 (9th Cir. 2001) ("[I]f a plaintiff cannot in its summary judgment motion

1  factual submissions connect any particular defendant to the incidents giving rise to liability, that

2  defendant is entitled to summary judgment and may not be required to go to trial.").  Production of a

3  mere scintilla of evidence is insufficient to defeat a motion for summary judgment.  *City of Vernon v.*

4  *Southern California Edison Co.*, 955 F.2d 1361, 1369 (9th Cir. 1992).

5        While the district court is "not required to comb the record to find some reason to deny a motion

6  for summary judgment,"[3] the court may nevertheless exercise its discretion "in appropriate circum-

7  stances," to consider materials in the record which are on file, but not "specifically referred to."  *Carmen*

8  *v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  However, the court need not

9  "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set

10  forth in the moving papers with adequate references so that it could be conveniently found."  *Id.*; *see*

11  *also Zoslaw*, 693 F.2d at 883 ("A party may not prevail in opposing a motion for summary judgment by

12  simply overwhelming the district court with a miscellany of unorganized documentation.").

13        In ruling on a motion for summary judgment, the court need not accept legal conclusions "cast in

14  the form of factual allegations."  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  "No

15  valid interest is served by withholding summary judgment on a complaint that wraps nonactionable

16  conduct in a jacket woven of legal conclusions and hyperbole."  *Vigliotto v. Terry*, 873 F.2d 1201, 1203

17  (9th Cir. 1989); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) (stating that

18  "mere allegation and speculation do not create a factual dispute for purposes of summary judgment").

19  ***Discussion***

20  ***I.***     ***Legal Standard for § 1983 Claims***

21        In order to state a cause of action under 42 U.S.C. § 1983, the plaintiff is required to show (1) a

22  violation of rights protected by the Constitution or created by federal statute; (2) proximately caused by

23  defendants acting under color of state law.  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991);

24  *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc) (stating that § 1983 "creates a

25  private right of action against individuals who, acting under color of state law, violate federal constitu-

26  tional or statutory rights.").

27

28      [3] *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988); *Nilsson v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

1    The Plaintiff must show that the defendants had personal involvement with the incidents which

2    caused the constitutional injury.  *Milton v. Nelson*, 527 F.2d 1158, 1159 (9th Cir. 1975).  In other words,

3    "supervisory personnel whose personal involvement is not alleged may not be held responsible for the

4    acts of their subordinates."  *Id.*  Moreover, a vicarious liability theory is unavailable in 1983 actions.

5    *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  Therefore, a supervisor may only be liable for the

6    actions of his subordinates if there exists either:  "(1) his or her personal involvement in the constitu-

7    tional deprivation; or (2) a sufficient causal connection between the supervisor's wrongful conduct and

8    the constitutional violation."  *Id.*  Since supervisor liability requires the supervisor's own action to serve

9    as an "affirmative link" to the illegal conduct though personal involvement or "authorization or

10   approval"[4], supervisor liability must be based on more than the mere right to control one's employees.

11   *Monell v. Dept. of Social Service of City of New York*, 436 U.S. 658, 694, n. 58 (1978).

12   ## II.   *Plaintiff's Claims*

13   In the instant case, Plaintiff claims that he sustained injuries from a chronic skin condition that

14   was not adequately treated by prison medical staff.  (Compl. pp. 2 & 3).  Specifically, Plaintiff alleges

15   that MTA Smith and HCAC Raupe acted with deliberate indifference to his serious medical condition

16   when they denied his Inmate/Parolee Appeal for "immediate and proper medical attention".  (Compl. p.

17   3).  He alleges that his skin condition was worsening and that MTA Smith and HCAC Raupe failed to

18   recommend prompt medical treatment.  (Compl. p. 3 & 4).  Plaintiff also contends that Defendant

19   Warden Hernandez, failed to train, supervise, and take action against his subordinates, MTA Smith and

20   HCAC Raupe.  (Compl. p. 4).  Plaintiff also claims that Defendant Alameida, former Director of CDCR,

21   knew or should have known about Plaintiff's medical condition and failed to take action against, train,

22   and supervise his subordinates, MTA Smith and HCAC Raupe.  (Compl. p. 4).

23   ### A.    Eighth Amendment Claims

24   Plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and

25   unusual punishment by their deliberate indifference to his serious medical needs.  In order to demon-

26   strate that the Defendants violated his Eighth Amendment rights, Plaintiff must allege facts sufficient to

27   prove that Defendants' acts or omission deprived him of the minimal civilized measures of life's

28

[4] *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976)

necessities *and* that the Defendants knew of and disregarded an excessive risk to Plaintiff's health.

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). This principle "establish[ed] the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* The Supreme Court has noted that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Id.*; *West v. Atkins*, 487 U.S. 42, 54-55 (1988). To assert an Eighth Amendment claim, a prisoner must allege facts sufficient to fulfill two requirements: one objective and one subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994), *cert. denied*, 514 U.S. 1065 (1995).

### 1. *Objective Component for Eighth Amendment Claim*

Under the objective requirement, the prisoner must allege facts sufficient to show that the prison official's acts or omissions deprived him of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Farmer*, 511 U.S. at 834. Prison officials can avoid the objective appearance of cruel or unusual treatment so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Farmer*, 511 U.S. at 832; *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981). To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoners' interest or safety." *Whitely*, 475 U.S. at 319. Prison conditions do not violate the Eighth Amendment unless they amount to "unquestioned and serious deprivations of basic human needs" or of "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. at 347 (1981); *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

### 2. *Subjective Component for Eighth Amendment Claim*

Under the subjective requirement, the prisoner must allege facts that show that the defendant acted with "deliberate indifference." *Wilson*, 501 U.S. at 303; *Allen*, 48 F.3d at 1087. "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Wilson*, 501 U.S. at 302-303.  In other words, an inmate must allege sufficient facts to indicate that prison officials acted with a "culpable state of mind." *Wilson*, 501 U.S. at 302.  Proof of this state of mind does not require a demonstration of express intent to cause harm, by either action or inaction, on the part of the official. *Farmer*, 511 U.S. at 835.  However, proof of an official's deliberate indifference to the health or safety of an inmate requires more than proof of mere negligence. *Id.*; *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

"Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs, or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted).

The indifference to medical needs also must be substantial.  Inadequate treatment due to malpractice or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Hallett v. Morgan*, 287 F.3d 1193, 1204 (9th Cir. 2002); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  Even if an inmate demonstrates that prison officials actually knew of a substantial risk to inmate health or safety, these officials are not deliberately indifferent if they responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844.  Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Additionally, a mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay or denial was harmful.[5]  While the harm caused by delay need not necessarily be "substantial,"[6] the Eighth Amendment is violated if "delays occurred to patients with problems so severe that delays would cause significant harm and that Defendants should have known

_____

[5] *See McGuckin*, 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); *Hunt*, 865 F.2d at 200 ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation."); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable.").

[6] *See Wood v. Housewright*, 900 F.2d at 1336, 1339-40; *McGuckin*, 974 F.2d at 1060 & n.2.

03cv1574 BEN (AJB)

1   this to be the case,"[7] and "a finding that the inmate was seriously harmed by the defendant's action or

2   inaction tends to provide additional support to a claim that the defendant was 'deliberately indifferent'

3   to the prisoner's medical needs."[8]

4          Regarding inaction or delay of treatment, "the fact that an individual sat idly by as another

5   human being was seriously injured despite the defendant's ability to prevent the injury is a strong

6   indicium of callousness and deliberate indifference to the prisoner's suffering." *Id.* (citing *Estelle*, 429

7   U.S. at 106).  However, a finding that the defendants' neglect of a prisoner's condition was an "isolated

8   occurrence,"[9] or an "isolated exception,"[10] to the defendants' overall course of treatment of the prisoner

9   ordinarily weighs against a finding of deliberate indifference.  *McGuckin*, 974 F.2d at 1060.  Further,

10  prison officials who ignore the instructions of a prisoner's treating physician create grounds for a claim

11  of deliberate indifference.  *Wakefield*, 177 F.3d at 1165; *Estelle*, 429 U.S. at 105; *Hamilton v. Endell*,

12  981 F.2d 1062, 1066-67 (9th Cir. 1992).

13         A prison inmate has no independent constitutional right to outside medical care in addition to the

14  medical care provided by the prison staff within the institution.  *See Roberts v. Spalding*, 783 F.2d 867,

15  870 (9th Cir. 1986).

16         **B.     Plaintiff's Eighth Amendment Claims Against Defendants Smith and Raupe**

17         Plaintiff claims that MTA Smith and HCAC Raupe deliberately ignored his worsening medical

18  condition by denying his appeals.  (Compl. p. 4).  Plaintiff argues that this constitutes deliberate

19  indifference as his condition was obvious to even a lay person.  (Compl. pp. 3 & 4).  Yet, despite

20  Plaintiff's contentions, Plaintiff was receiving adequate medical care.  (Defs. Ex. B, Physician's

21  Progress Notes).  His Department of Corrections medical record shows that he was seen by Dr. Peterson

22  in the Donovan Dermatology Clinic multiple times over a period of two years and was receiving

23  medical care when the appeals were filed.  (*Id.*; Defs. Ex. C, Plaintiff Dep. at 24-25; Defs. Ex. E, Smith

24

25         [7] *Hallett*, 287 F.3d at 1206.

26         [8] *McGuckin*, 974 F.2d at 1060.

27         [9] *Wood*, 900 F.2d at 1334.

28         [10] *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

1  Dec. at ¶ 8; Defs. Ex. D, Raupe Dec. at ¶¶ 9-10).  Between January and July of 2002, Plaintiff was seen

2  by Dr. Peterson seven times and had another follow-up appointment scheduled. (Defs. Ex. C, Plaintiff

3  Dep. at 29; Raupe Dec. at ¶ 10).  This prescription was just one of several medications Plaintiff had been

4  prescribed over the two year period of his incarceration.  (Defs. Ex. E, Smith Dec. at ¶ 8).  According to

5  the notes in Plaintiff's medical files, his skin seemed to be improving and softening with the continual

6  use of baby oil.  (Defs. Ex. B, Physician's Progress Notes  p. 28).

7       Both MTA Smith and HCAC Raupe looked into Plaintiff's appeals and complaints.  (Defs. Ex.

8  E, Smith Dec. at ¶ 8; Defs. Ex. D, Raupe Dec. ¶ 9 ).  In light of the information above, they concluded

9  that Plaintiff was indeed receiving medical care for his condition.  Neither MTA Smith nor HCAC

10  Raupe acted with deliberate indifference towards Plaintiff.  Each throughly investigated his appeals and

11  followed all required procedures.

12       Plaintiff contends that the Defendants should have granted his appeals for "immediate and proper

13  medical attention".  He argues that the failure to do so amounted to deliberate indifference to his serious

14  medical needs.  However, differences in judgment between an inmate and prison medical personnel

15  regarding appropriate medical diagnosis and treatment are not sufficient to establish a deliberate

16  indifference claim.  *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989).  Furthermore, even if Plaintiff

17  could establish that these Defendants knew of a substantial risk to his health, the Defendants will not be

18  found to be deliberately indifferent if they responded reasonably to the risk, even if the harm ultimately

19  was not averted.  *Farmer,* 511 U.S. at 844.  While Dr. Peterson had not yet "cured" Plaintiff's condition,

20  he was providing Plaintiff with ongoing medical care.  Plaintiff's medical records indicate that the

21  treatments were at least easing some of the symptoms associated with Plaintiff's condition.  Moreover,

22  both Smith and Raupe denied Plaintiff's appeals only after they throughly investigated Plaintiff's

23  claims, verified Plaintiff's ongoing treatment, and noted that Plaintiff was scheduled to see the doctor

24  again in the near future.  Plaintiff was not deprived of the basic human need for medical care, either

25  intentionally or negligently, and has failed to demonstrate that either of these Defendants acted with

26  deliberate indifference to his serious medical needs.  As such, the Court hereby GRANTS Defendants'

27  Motion for Summary Judgment as to the Eighth Amendment claim against MTA Smith and HCAC

28  Raupe.

1

        **C.**       **Plaintiff's Eighth Amendment Claims Against Defendants Hernandez and Alameida**

2

        Plaintiff contends that Defendants Warden Hernandez and Former Director of the CDCR

3

Alamedia failed to properly train, supervise, and take action against MTA Smith and HCAC Raupe and

4

as a result of this failure, Plaintiff was caused serious injury. (Compl. p. 4).   Neither Hernandez nor

5

Alameida was aware of Plaintiff's medical condition and neither made any decisions related to his care.

6

(Defs. Ex. F, Hernandez Dec. at ¶¶ 5-12; Defs. Ex. G, Alameida Dec. at ¶¶ 5-12).   Plaintiff has not

7

shown the necessary causal connection between decisions or actions taken by Hernandez or Alameida,

8

and his medical care.   Therefore, his claim amounts to nothing more than a vicarious liability claim,

9

which is unavailable in § 1983 actions.[11]   This Court grants Defendants' Motion for Summary Judgment

10

as to the Eighth Amendment claim against Hernandez and Alameida.

11

        Based on the foregoing, the Court finds that even when the facts are construed in a light most

12

favorable to the Plaintiff, the Plaintiff has failed to establish a violation of his Eighth Amendment rights.

13

Plaintiff has not demonstrated that the Defendants failed to treat his medical needs.   The evidence

14

indicates that Plaintiff had been receiving treatment for his condition continually since he began to

15

complain about it.   Moreover, his medical records seem to indicate that his skin condition was showing

16

some improvement over time.

17

        The evidence does not support a conclusion of deliberate indifference on the part of any of the

18

Defendants.   Plaintiff's medical needs were not purposely ignored by the Defendants, nor did any of the

19

Defendants fail to reasonably respond to Plaintiff's medical condition.   *McGuckin v. Smith*, 974 F.2d at

20

1060.   As such, the evidence does not support the conclusion that the Defendants acted with a culpable

21

state of mind.   *Wilson*, 501 U.S. at 302.

22

        Based on the foregoing, the Court finds that Plaintiff cannot demonstrate that there is a triable

23

issue of material fact as to whether Defendants acted with deliberate indifference to Plaintiff's serious

24

medical needs in violation of Plaintiff's Eighth Amendment rights.   Plaintiff has failed to state a cause

25

of action under 42 U.S.C. § 1983.

26

27

28

---

[11] *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)

**D.   Due Process Claims**

Plaintiff claims that his due process rights were violated because he did not receive a fair hearing regarding his inmate appeals for medical care.  The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  This Clause guarantees individuals the right to both substantive and procedural due process.  *United States v. Salerno*, 481 U.S. 739, 746 (1987) (analyzing the Due Process Clause of the Fifth Amendment). Substantive due process "prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty . . . ."  *Id.* (internal quotation marks and citations omitted).  Procedural due process requires that the government's deprivation of life, liberty, or property, even if consistent with substantive due process, "be implemented in a fair manner."  *Id.* (internal quotation marks and citation omitted).

*1.*     *Procedural Due Process*

To plead procedural due process violations, a plaintiff must allege: (1) a life, liberty or property interest exists and has been subject to interference by the state; and (2) the procedures attendant upon the deprivation of an existing interest were constitutionally insufficient.  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1990).

Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.  *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972).  In addition to liberty interests that arise directly from the Constitution, courts have long recognized that state prison regulations may give rise to liberty interests that are protected by the Fourteenth Amendment.  *Meachum v. Fano*, 427 U.S. 215, 223-227 (1976); *Wolff*, 418 U.S. at 557-58.  Nonetheless, the interest created by the regulation must be something more than freedom from the restrictions ordinarily contemplated by a prison sentence.  *Sandin v. Conner*, 115 S. Ct. 2293 (1995).  The interests created by state prison regulations are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due

Process Clause of its own force, nonetheless impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 2300 (citations omitted).

The basic requirements of Fourteenth Amendment due process claims are the right to notice and the opportunity to be heard "at a meaningful time and in a meaningful manner." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982). The California prison system allows inmates to appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse affect upon their welfare by filing an inmate appeal Form CDC 602. 15 Cal. Code Regs. § 3084.1 (2006) After the appeal is filed, it is subject to four levels of review: (1) an informal level; (2) a first formal level; (3) a second formal level; and (4) the Director's level review. *Id.* at § 3084.5 (2006). If an inmate is dissatisfied with the prison's decision, he can appeal to the next level of review. *Id.* An inmate is required to appeal until all available administrative remedies are exhausted. 42 U.S.C. § 1997e.; *see Woodford v. Ngo*, 126 S.Ct 2378, 2382-83 (2006).

Plaintiff claims that the procedures attendant to protecting his right to receive medical care were constitutionally insufficient, as he did not receive "a fair hearing and fair medical judgment as to his complaints about medical problems." (Compl. p. 5). To the contrary, the record shows that both his original claim and his appeal from that decision were thoroughly investigated. (Pl. Ex. A, Inmate Appeal Form ;Defs. Ex. E, Smith Dec.; Defs. Ex. D, Raupe Dec.). Smith and Raupe denied (or denied in part) Plaintiff's inmate appeal only after a complete review of Plaintiff's medical records, receiving verification that he was receiving ongoing medical treatment, and confirming that he had a future appointment with the doctor. Importantly, Plaintiff was informed of his right to appeal the decision to a higher authority each time his appeal was denied. (*Id.*). In fact, Plaintiff exercised his right to appeal Smith's and Raupe's decisions to several higher levels of authority. Thus, the CDC 602 inmate appeals process provided Plaintiff with procedural due process sufficient to protect his liberty interest in receiving medical treatment.

2.   <u>Substantive Due Process</u>

To plead a substantive due process violation, a plaintiff must allege governmental action which deprives plaintiff of a life, liberty or property interest which may not be deprived regardless of the procedure employed. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 846-50 (1992); *Daniels v. Williams*, 474 U.S. 327, 331 (1986); *Whitley v. Albers*, 475 U.S. 312, 326-27

13

1  (1986).  State action that "do[es] more than offend some fastidious squeamishness or private sentimental-

2  ism," but rather, "shocks the conscience" to the point that it "is bound to offend even hardened

3  sensibilities" can be said to violate due process.  *Rochin v. California*, 342 U.S. 165, 172 (1952).

4      Under this standard, substantive due process violations have been limited to a small number of

5  issues.  *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994).  In *Collins v. Harker Heights*, 503 U.S. 115

6  (1992), the Supreme Court noted "[a]s a general matter, the Court has always been reluctant to expand

7  the concept of substantive due process because the guideposts for responsible decision making in this

8  unchartered area are scarce and open-ended." *Id.* at 124. Accordingly, the protections of substantive due

9  process have for the most part been accorded to matters relating to marriage, family, procreation, and

10  the right to bodily integrity.  *See, e.g., Planned Parenthood of Southeastern Pa.*, 505 U.S. at 846-50

11  (1992) (describing cases in which substantive due process rights have been recognized); *Johnson v.*

12  *Meltzer*, 134 F.3d 1393, 1397 (9th Cir. 1998) ("Whatever grammarians may think of the anomalous

13  expression, 'substantive due process,' it is well established that a person's liberty interest in bodily

14  integrity is one of the personal rights accorded substantive protection under the Due Process Clause.").

15      Plaintiff claims that he has been denied his right to receive proper medical care for his skin

16  condition. This is simply not the type of claim to which the process of substantive due process has been

17  extended.

18                   *a.      Smith and Raupe*

19      Plaintiff claims that Smith and Raupe violated his Due Process rights by denying his CDC 602

20  appeals without a fair hearing and a fair medical judgment, thus denying him access to adequate medical

21  care. (Compl. p. 5).  As discussed above in relation to plaintiff's Eighth Amendment claim, the evidence

22  indicates that Plaintiff was receiving continual medical attention for his skin condition.  Plaintiff's

23  appeals were thoroughly investigated by two different prison officials and no inadequacies in his

24  treatment were discovered by either official. (Defs. Ex. E, Smith Dec.; Defs. Ex. D, Raupe Dec.).

25  Moreover, all CDC 602 appeal administrative procedures were followed by both Smith and Raupe. (*Id.*;

26  Defs. Ex. A, Inmate Appeal Form.).  Nothing in the record  indicates that Plaintiff was subject to an

27  arbitrary exercise of government power.  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  Nor does

28  Plaintiff's treatment by any of the Defendants shock the conscience.  *County of Sacramento*, 523 U.S. at

846.  As such, neither Smith nor Raupe violated Plaintiff's Due Process rights. For the reasons stated

1   above, the Court **GRANTS** Defendant's  Motion for Summary Judgment as to Defendants Smith and

2   Raupe.

3                           *b.        Hernandez and Alameida*

4          Plaintiff claims that Hernandez and Alameida failed to property train, supervise, and take action

5   against their subordinates, Smith and Raupe. (Compl. p. 5).  In this way, they failed to procedurally

6   protect his right to access adequate medical care. (Compl. p. 5).  While Hernandez and Alameida  have

7   supervisory positions over Raupe and Smith, they did not make any decisions or participate directly  in

8   any part of Plaintiff's 602 appeal. (Def. Ex. F, Hernandez Dec. at ¶ ¶  5-12; Def. Ex. G, Alameida Dec.

9   at ¶ ¶ 5-12).  Neither had any direct influence over Plaintiff's 602 appeal. (*Id.*).  In fact, neither was

10  aware of Plaintiff's medical condition and made no decisions relating to his treatment. (*Id.*).  As such,

11  neither Hernandez nor Alameida violated Plaintiff's Due Process rights.  For the reasons stated above,

12  the Court **GRANTS** Defendant's Motion for Summary Judgment as to Defendants Hernandez and

13  Alameida.

14                              ***Conclusion***

15          For the reasons set forth herein, Defendant's Motion for Summary Judgment is hereby

16  GRANTED as to Plaintiff's Eighth Amendment and Due Process claims against Defendants Smith,

17  Raupe, Hernandez, and Almeida only.  Plaintiff's claims as to Defendants Peterson and Menkes remain.

18  Defendants shall file a Motion for Summary Judgment or Answer as to the remaining claims and

19  Defendants on or before October 23, 2006.

20          IT IS SO ORDERED.

21  DATED:  September 19, 2006

22

23

24  _____

25  Hon. Roger T. Benitez

26  United States District Judge

27

28